Case 1:22-cv-01495-JPH-MKK   Document 48   Filed 03/06/23   Page 1 of 10 PageID #: 212

1:22-cv-01495-JPH-MKK

FILED
03/06/2023
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

# Amended Complaint

Pursuant to Fed. R. Civ. P. 15, Plaintiff files the following Amended Complaint, for the purpose of seeking appropriate relief.

## Jurisdictional Statement

To this Pro Se Litigant's understanding, pursuant to Rule 8 this court already has jurisdiction, so I do not need to establish it. That said, in an over abundance of caution, I will reiterate that this court has jurisdiction pursuant to 28 USC 1332 and Article III Section 2. Diversity of Citizenship and the fact that the outcome of this case can affect interstate commerce which is regulated by congressional statute give this court jurisdiction. The following promulgations all have an element of federal legality as well. The Preamble of the Constitution, 4th Amendment, and the 9th Amendment are all Constitutionally protected. 42 USC 1981, 42 USC 1982, 42 USC 1983, 42 USC 1985, 42 USC 1986,  18 USC 1001, and 28 USC 1337 are all laws promulgated by Congress. And Uniform Commercial Code Sections: 1-103, 1-304, 1-305, 2-609, 2-615, 2-711, 2-712, 2-713, 2-714, 2-715, 2-716, 2-718, 2-719, 2-721, 2-724, and 2-725 are federal guidelines to facilitate interstate commerce. These guidelines have been adopted as Indiana law.

## Entitlement to Relief

I bought a Guaranteed Asset Protection contract at the same time I bought my vehicle in September 2018. That said, the money paid for the contract went to Zurich and presumably was shared with the defendant as they had a function in the contract. The contract is part of my vehicle's finance agreement, and acts as a waiver in the event of a total loss. The agreement as a whole refers to the contract as a debt cancellation and a GAP contract. Nowhere in the contract does it state that this product is specifically a "GAP agreement." Furthermore, the terms of the contract do not define the contract as a "GAP agreement." However, they do very clearly state I am due a benefit. The limitations (reasons I might not receive the benefit) within the terms of the contract have no relevance to my situation, and so are not applicable to my benefit. Yet and still, the defendants denied my claims for those benefits. When asked to provide reasoning for the denial, the defendants responded with what I can only describe as a nonsensical summation of amounts that should actually add to my benefit in many cases according to the language within the contract. When asked to explain their reasoning for these inconsistencies, the defendants' use of the language is inconsistent with common english grammar, common sense, and common decency. No reasonably prudent consumer would read the contract, look to the applicable laws, and come to the conclusion that: 1. The defendants' interpretation is what the underwriting means and 2. That the consumer should buy that contract. According to their misinterpretation of the

terms, there is no scenario where a consumer can actually use the product they bought. The defendants' treatment of their duty was irrational, unfair, and seemingly purposely arbitrary.

My car was totaled in June of 2021. The defendants violated a litany of my rights in an intentious effort to breach their duty. We had a Guaranteed Asset Protection agreement whose benefits included the Actual Cash Value of the vehicle and up to $1,000 of the deductible upon proof of total loss. I gave them all the documents they asked for. They waived nothing, claiming my insurance covered the cost of the loan, and as a result, negated the obligor's liability. That stipulation is NOWHERE in the terms of Limitations. That would defeat the purpose of the Asset protection, and is contrary to what any reasonable consumer would think after reading the contract. Upon trying to collect my benefits, defendants kept using terms like "GAP" over the phone to make it seem like the agreement was to cover the "gap" between what the insurance covers and what it doesn't, even though that's not what the benefits state. They have told me that the purpose is to protect the loan, but anyone who knows anything about finance knows a loan is not an asset. Therefore, naming the agreement a Guaranteed Asset Protection product would be a major misrepresentation. Because the benefits of the contract state that I am owed a waiver and there is an obligation of the defendants to deliver/operate the product that was sold to me, it is their responsibility that the purpose of the contract is carried out. After the initial denial, I tried several times to explain their duty to them per the language in the contract. Intent was proven when I made them aware of their error and they continued to take steps causing the wrongful detainment of property that was rightfully mine. This left me without a vehicle.

In 2020, COVID hit my companies and I hard. I worked multiple side jobs for years investing what was the equivalent of my life savings into my companies to build infrastructure that was to yield a return on investment in spring of 2020. When everything shut down, I lost my revenue streams and my investments. The accident and subsequent wrongful denial in the summer of 2021 could not have happened at a worse time. I was seeking government assistance to get my companies back on track. In the meantime, I was living with my disabled uncle as I helped him get permanent aid through official avenues. I was saving money for a functional apartment, but after getting him squared away, I didn't have anywhere to stay anymore. I ended up having to stay in the cars I was renting to perform my daily operations. Unfortunately,  because of the defendant's breach of duty, I had to spend about 3 to 4 times more than what I was paying on my own car on the rentals. This made it fiscally unfeasible to get a place to live. Because I work from a home office, this brought most of my operations to all but a halt. This coupled with my diminished assets minimized the amount of work I could get done. Unfortunately, circumstances being what they were, I was forced to miss out on an opportunity for financial assistance. Having only one revenue stream at the time obviously cost me. Because my companies are young and supported by me, this had a domino effect debilitating each business further, preventing my companies from paying me, and forcing me to litigate in order to collect.

The defendants in this matter are two of a numerous amount of companies who effectively simultaneously acted illicitly and illegally resulting in catastrophic financial losses for myself and my companies. Timing and other factors surrounding these

breaches, negligences, and otherwise malfeasances indicate that these injurious violations of my protections were intentional and in all likelihood premeditated.

The resulting damage was not only injurious but arresting. As my ability to act and think freely along with my liberties as an american-born citizen have been restrained as a result of these actions, it is reasonable to assume that these results were one of the purposes of these insidious endeavors. Along with effectively promoting the detainment of my property through misrepresentation, deceptive sales acts, and bad faith practices, the defendants congruently limited the effectiveness of my financial strategies. Without the benefit of the good faith duty they were obligated to perform, not only was my mobility severely deterred, but my time and ability to attain resources to mitigate my losses was drastically reduced. This limited my options as to how I could progress in a number of ways including jobs, housing, food, clothing, and assistance. Once set into motion, my dilapidated situation spiraled as my resources diminished and my ability to replenish them dwindled accordingly. Losing mobility, then resources, then the ability to even get resources because of health concerns as well as other obstructions to my ability to freely enjoy my freedoms; along with the other concurrent and congruent effects of the aforementioned violations, made it so that I was effectively confined.

This debilitation has made me vulnerable to a number of attacks. Physical, Financial, Electronic, and Emotional violence have been inflicted on me as a result of my debased position. Without the security of a home or even a vehicle, I have not been able to protect my interests to the degree I normally would. I have had files that would have allowed me to obtain certain resources deleted from my devices. I have been

subjected to beligerence no person should ever have to endure. I have suffered harassment from police. I have been threatened with everything from death, rape, and medical experimentation, being forcefully implanted with devices that have the ability to detrimentally effect my nervous system. As farfetched as that sounds, when one does not have the resources to secure themselves and their belongings, coupled with the fact that I have already been diagnosed with multiple sclerosis, a threat like that is terrifying. Including the physical and financial violence inflicted upon me, I have endured a great deal of undue hardship as a result of the defendants' actions.

     Had either company done what they were supposed to, I would have been able to prevent the majority, if not all of my losses. To reiterate, circumstances created by the defendants' breach of duty caused me to miss out on a number of opportunities with massive repercussions. Had either one of the defendants made the decision to honor the terms of the contract in good faith, I would have, at the very least, been able to afford the down payment of a car. I would have been able to continue functioning as an individual and as an employee of my companies. In the absolute worst case scenario, I would have been able to get one of a myriad of jobs that were hiring drivers. Obviously the other scenario is going over a year without an income I can actively control. This glaring absence of mobility has had pervasive effects throughout the totality of my life. My devalued position has even put me in the crosshairs to be recruited by less than savory companies via shadowy interactions. These are companies I would never consider working for or with but because of my undermined position, I have been forced to choose between scenarios where my subsequent victory required an exorbitant amount of hardship or my resulting victory required an undue amount of

patience/resilience. Financial freedom comes with more favorable options. Most of the detrimental financial aspects of the circumstances created by the defendants are readily understood, but the social facet of it is a whole other set of issues. Certain networks damaged for reasons such as poverty can cost a great deal of time, effort and energy to mend. As a musician, my social image being damaged is something that is certain to have resounding effects. This set of circumstances has shaken my career to its foundation. I have been extraordinarily patient, resilient, and strong. It's time for my victory.

The defendants misrepresent what the contract is, then fraudulently claim the misrepresentation as true when confronted about it. The defendants are very clearly purposely selling a product that allows them to sit on the fence as far as how the product works. Imagine needing an oil change. You go to the service provider and there is product called a "system flush" whose description reads as an oil change. You want the oil change, so you buy the "system flush." After the transaction is complete, you drive off and your engine locks up due to needing an oil change. You call the service provider, and their reply is along the lines of, "oh well you bought a system flush. We don't change your oil." That is an exact analogy for this transaction except, the defendants being a separate financial institution than the obligor, likely would have to make some sort of payment to the obligor for the obligor to be willing to waive the debt. As a result, in the matter at hand, it is likely one or more of the defendants benefit by denying the claim. So using a combination of conflation, subterfuge, and gaslighting the defendant's practice is to convince consumers they are owed less than what they

should get. Telling consumers they are getting one product just to switch it out after they have paid is obviously not operating in good faith. As a result, instead of the benefit just being conferred, I am being forced to litigate in order to extract it.

The defendants benefitted from my payments of the GAP contract. This subsequent unearned payment and the accompanying breaches forced me into the situation I am in now. I am homeless, car-less, and lacking almost anything else I have ever worked to secure. These wretched circumstances would have been easily avoided if not for the defendants' breaches of duty. Even something as simple as filing court papers becomes an arduous sometimes insurmountable quest when you have no car and are carrying the remnants of your life on your back. I ran out of time to respond to the Westfield case this court alluded to in document 47, because I didn't have the means to deliver papers that would have allowed the judges to make a decision more consistent with Congress' announced intentions in regards to the relevant statutes.

## Demand for Relief Sought

I am filing suit in order to protect my rights and to right the wrongs I have suffered at the hands of these companies. As each of these companies apparently had the ability to prevent the losses I have suffered, I see fit to demand each of them be held responsible for not doing that for which they were responsible.

Zurich: $128,922,470,883

UUSC:  $128,922,470,883

## Conclusion

I paid Zurich for a product/service. They then claimed that it does not do what the terms claim it does. UUSC had a duty to insure that this service/product was carried out. The product was an Addendum that provided the benefit of a waiver under certain circumstances. Those circumstances arose, and the two defendants congruently denied me the benefit for which I had paid. Those denials caused me injuries. This civil action is a demand of redress for those damages.

Respectfully requested,

Keith Turner
Keithspadez@gmail.com
3176570457
275 Medical Dr #3457
Carmel, Indiana 46082

Zurich
1299 Zurich Way,
Schaumburg, IL 60196-1056

R. Morgan Salisbury (#31094-15)

Lewis, Brisbois, Bisgaard & Smith, LLP

250 E. Fifth Street, Suite 2000

Cincinnati, OH 40504

(513) 808-9917 – Telephone

(513) 808-9912 – Facsimile

Morgan.Salisbury@lewisbrisbois.com

Attorney for Intervening Defendant Universal Underwriters Service Corporation

_____

Signed under penalties of perjury

03/06/23

_____